**STATE v. HANIF**

[228 N.C. App. 207 (2013)]

STATE OF NORTH CAROLINA
v.
KINGG ERIC MARKEE HANIF

No. COA12-1108

Filed 2 July 2013

1. **Evidence—counterfeit controlled substance—visual identification**

The trial court committed plain error in a prosecution involving a counterfeit controlled substance by admitting testimony from a forensic chemist about the identity of the substance where the testimony was based upon a visual inspection rather than a scientific, chemical analysis. There was no meaningful distinction between this case and *State v. Ward*, 364 N.C 133.

2. **Drugs—counterfeit controlled substance—improper identification of substance—sufficiency of evidence**

The trial court properly denied defendant's motion to dismiss charges involving a counterfeit controlled substance for insufficient evidence, even though the identification of the substance was erroneously admitted, because the appellate court is required to consider both competent and incompetent evidence in evaluating the sufficiency of the evidence.

3. **Evidence—common plan or scheme—counterfeit drug sales—additional uncharged substance**

In a case decided on other grounds, there was no plain error in a prosecution involving counterfeit controlled substances in the admission of testimony about an additional rock-like substance for which defendant was not charged and which was determined to be Epsom salt. The Espom salt and an officer's testimony about his observations were relevant in that they had a tendency to make the existence of defendant's possession and sale of a counterfeit controlled substance more likely and were probative of defendant's intent, plan, scheme, and *modus operandi*.

4. **Arrest—procedure—defendant's statements to magistrate —admissible**

In a case decided on other grounds, there was no plain error in the admission of statements defendant made before a magistrate. Although defendant argued that the statements were presented to cast him in a negative light for his violent and disrespectful behavior,

the testimony described part of the arrest procedure and related to defendant's guilt of the offenses with which he had been charged.

Appeal by defendant from judgment entered 29 March 2012 by Judge Ronald E. Spivey in Forsyth County Superior Court. Heard in the Court of Appeals 27 February 2013.

*Attorney General Roy Cooper, by Assistant Attorney General Phyllis Tranchese, for the State.*

*Gilda C. Rodriguez for defendant-appellant.*

BRYANT, Judge.

Where we are unable to discern any meaningful distinction between *State v. Ward*, 364 N.C. 133, 694 S.E.2d 738 (2010), and the instant case, we are compelled to grant defendant a new trial.

On 26 September 2011, defendant was indicted on charges of selling and delivering a counterfeit controlled substance, namely tramadol hydrochloride, which defendant represented to be Vicodin, a Schedule III controlled substance.[1] Each of the charges stemmed from events, which occurred on 3 August 2011. Detectives with the Winston-Salem Police Department, assigned to the Special Investigations Division Vice/ Narcotics Unit were working undercover when they were approached by defendant who asked one of the undercover detectives if he wanted to buy some Vicodin. A negotiation ensued, and defendant agreed to sell the detective two pills for four dollars. The detective later testified that defendant pulled from his pants pocket a prescription pill bottle, poured out two pills, and handed them to the detective. Incident to his arrest, defendant was searched and along with two prescription medication bottles – one containing defendant's personal prescription for tramadol hydrochloride – the officers discovered a clear plastic baggie containing a rock-like substance later determined to be Epsom salt.

Defendant filed a motion in limine to exclude the Epsom salt as well as statements he made before a magistrate, arguing that the baggie of Epsom salt and the statements were irrelevant to the charges and inadmissible at trial. Trial commenced during the 26 March 2012 Criminal Session of Forsyth County Superior Court, the Honorable Ronald E. Spivey, Judge presiding. Prior to impaneling the jury, the trial court held

---

1. Evidence was introduced at trial to show that tramadol hydrochloride is not a controlled substance.

a hearing concerning defendant's motion in limine. At the conclusion of the hearing, the trial court orally announced its ruling denying defendant's motion to exclude evidence regarding the Epsom salt; suppressing statements made regarding a law enforcement officer who died in an unrelated event; and admitting statements made by defendant to the officers and magistrate during his arrest.

Following the close of the evidence, the jury returned guilty verdicts on the charges of selling or delivering a counterfeit controlled substance and possession of a counterfeit controlled substance with intent to sell or deliver. The trial court entered judgment in accordance with the jury verdicts and sentenced defendant to consecutive active terms of nine to eleven months for each offense. Defendant appeals.

------

*I*

[1]  Defendant argues that the trial court committed plain error by admitting evidence identifying a particular substance as tramadol hydrochloride based solely upon a visual inspection.[2] We agree.

"[P]lain error review in North Carolina is normally limited to instructional and evidentiary error." *State v. Lawrence*, 365 N.C. 506, 516, 723 S.E.2d 326, 333 (2012) (citation omitted).

> [T]he plain error rule ... is always to be applied cautiously and only in the exceptional case where, after reviewing the entire record, it can be said the claimed error is a "*fundamental* error, something so basic, so prejudicial, so lacking in its elements that justice cannot have been done," or "where [the error] is grave error which amounts to a denial of a fundamental right of the accused," or the error has "resulted in a miscarriage of justice or in the denial to appellant of a fair trial' " or where the error is such as to "seriously affect the fairness, integrity or public reputation of judicial proceedings" or where it can be fairly said "the instructional mistake had a probable impact on the jury's finding that the defendant was guilty."

*Id.* at 516-17, 723 S.E.2d 333 (original emphasis).

------

2. Our Supreme Court has held that this is an admissibility issue rather than a sufficiency of the evidence issue. In *State v. Israel*, 353 N.C. 211, 216, 539 S.E.2d 633, 637 (2000), and *State v. Nabors*, 365 N.C. 306, 718 S.E.2d 623 (2011), the Court pointed out that erroneously admitted evidence is still considered in determining whether the evidence is sufficient to support a conviction.

North Carolina General Statutes, section 90-95(a)(2) states that it is unlawful "[t]o create, sell or deliver, or possess with intent to sell or deliver, a counterfeit controlled substance." N.C. Gen. Stat. § 90-95(a)(2) (2011). A conviction under this statute requires the State to prove "(1) that defendant possessed a counterfeit controlled substance, and (2) that defendant intended to sell or deliver the controlled substance." *State v. Williams*, 164 N.C. App. 638, 644, 596 S.E.2d 313, 317 (2004) (citations and quotations omitted).

Defendant was indicted and tried on charges of selling and delivering a counterfeit controlled substance and possession of a counterfeit controlled substance with intent to sell and deliver. As to both charges, defendant challenges the admission of evidence that the seized pills were counterfeit. Defendant cites *State v. Ward*, 364 N.C. 133, 694 S.E.2d 738 (2010), in support of his contention that the evidence was impermissibly admitted.

In *Ward*, the trial court admitted evidence identifying an alleged controlled substance as a controlled substance despite the defendant's objection. *Id.* at 138, 694 S.E.2d at 741. Our Supreme Court held that "the trial court abused its discretion by permitting the State's expert witness to identify certain pills when the expert's methodology consisted solely of a visual inspection process." *Id.* at 134, 694 S.E.2d at 739. The Court reasoned that expert testimony concerning whether a substance introduced at trial meets the technical, scientific definition of a controlled substance requires a chemical analysis. *Id.* Moreover, the Court explained that "a scientific, chemical analysis must be employed to properly differentiate between the real [controlled substance] and the counterfeit." *Id.* at 143, 694 S.E.2d at 745.

Here, State's witness Mr. Brian King, a forensic chemist with the North Carolina State Crime Lab, testified that after a visual inspection, he identified the pills as tramadol hydrochloride, a prescription medication. On direct examination, Mr. King testified as follows:

Q. Okay. I'm going to hand you what's marked as State's 3 and 4. Have you seen these items before?

A. Yes. I have.

. . .

Q. Okay. Let's start with the pills.

. . .

Q. How did you process those when they came to your lab?

A. When I first removed them from the envelope, I noticed that they were tablets. And my first -- since it was in a clear plastic bag, I was able to read the markings on the tablet. And the first thing I went to was my online database.

Q. Okay. How many times do you use that database?

A. For every tablet -- every pharmaceutical tablet case I've used.

Q. Okay. And what did – what did that investigation yield?

A. The tablet markings – I'll refer to my worksheet -- tablet markings through our Micromedex online database resulted in tramadol hydrochloride.

Q. Okay. Now, have you ever encountered tablets of tramadol hydrochloride before as part of your job?

A. Yes I have.

Q. Is that a controlled substance?

A. No, sir.

Q. It's a prescription pill, right?

A. That's correct.

Q. But it's not a controlled substance?

A. Not from the North Carolina statutes, no.

On cross-examination, Mr. King testified as follows:

Q. So you spent time analyzing what everybody knew was not a controlled substance to prove that it was not a controlled substance as to the tramadol?

A. No. I did not analyze it. I visually inspected, but I did not analyze the tramadol.

Q. So there was no chemical analysis done to the tramadol whatsoever?

A. No, sir.

Mr. King used a two-step visual identification process to identify the pills as tramadol hydrochloride but performed no chemical analysis. While the State never tendered Mr. King to the trial court as an expert witness, the sole purpose of his testimony was to show that the tablets he examined were not a controlled substance and, therefore, counterfeit. In the absence of a scientific, chemical analysis of the purported controlled substance, Mr. King's visual inspection was insufficient to identify the composition of the pills. *See Id.* at 143, 694 S.E.2d at 745 ("By imposing criminal liability for actions related to counterfeit controlled substances, the legislature not only acknowledged that their very existence poses a threat to the health and well-being of citizens in our state, but that a scientific, chemical analysis must be employed to properly differentiate between the real and the counterfeit.").

Therefore, because we are unable to discern any meaningful distinction between *State v. Ward* and the instant case and because the admission of evidence as to the identity of a counterfeit controlled substance based solely upon a visual inspection constitutes plain error, *State v. Brunson*, 204 N.C. App. 357, 361, 693 S.E.2d 390, 393 (2010), we must grant defendant a new trial.[3]

## II

Because the other issue defendant argues on appeal may again arise in a new trial, we review defendant's contention.

Defendant argues that the trial court committed plain error by admitting into evidence testimony regarding the Epsom salt found at the time of his arrest and testimony regarding defendant's statements and behavior directed towards the arresting officers and the magistrate. Defendant contends that such testimony amounted to impermissible character evidence under 404(b) and was irrelevant under Rule 401. We disagree.

While defendant filed a pre-trial motion in limine to exclude certain evidence, defendant failed to renew his objection at the time the evidence was offered during trial. *See State v. Hayes*, 350 N.C. 79, 80, 511 S.E.2d 302, 302 (1999) ("[a] motion in limine is insufficient to preserve

---

3. [2] Although defendant argues that the trial court erred by denying his motion to dismiss the cases against him for insufficiency of the evidence, we conclude, given that the inadmissible evidence concerning the identity of the counterfeit controlled substance was admitted at trial and that we are required to consider both competent and incompetent evidence in evaluating the sufficiency of the evidence, *Israel*, 353 N.C. at 216, 539 S.E.2d at 637, that the trial court properly denied defendant's motion.

for appeal the question of the admissibility of evidence if the defendant fails to further object to that evidence at the time it is offered at trial." (citation omitted)); *see also, State v. Oglesby,* 361 N.C. 550, 648 S.E.2d 819 (2007). Now, on appeal, defendant contends the admission of such evidence amounted to plain error.

### *Epsom Salt*

**[3]** At the conclusion of the pre-trial hearing on defendant's motion in limine, the trial court announced its ruling as to each challenged statement and exhibit.

> First, as to the discovery of the items which were later identified as not a controlled substance and purportedly Epsom salts, the Court will treat evidence of those akin to 404(b).
>
> . . .
>
> The Court will find that the discovery of these items based upon their shape, size, packaging, and proximity to other items which in the officer's observations had just been sold to another detective would form the basis of proving possibly intent, knowledge, plan, scheme, modus operandi as to 404(b). The Court, in applying the 403 balancing test, will find the introduction of those items will be more probative than prejudicial. So the Court will deny the request for motion in limine as to those items.

Pursuant to Rule 404(b) of our Rules of Evidence,

> [e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake, entrapment or accident.

N.C. Gen. Stat. § 8C-1, Rule 404(b) (2011).

This Court has held that the proper admission of evidence pursuant to Rule 404(b) involves a three-step test:

> First, is the evidence relevant for some purpose other than to show that defendant has the propensity for the type of conduct for which he is being tried? Second, is that purpose relevant to an issue material to the pending case?

> Third, does the probative value of the evidence substan-
> tially outweigh the danger of unfair prejudice pursuant to
> Rule 403?

*State v. Glenn*, ___ N.C. App. ___, ___, 725 S.E.2d 58, 67 (citations omit-
ted), *petitions for writ of supersedeas and disc. rev. denied, mot. to
dismiss appeal allowed*, ___ N.C. ___, 734 S.E.2d 863 (2012).

In his brief submitted to this Court, defendant raises the following
challenge:

> There can be no other purpose for the Epsom salt evi-
> dence other than to show that [it] was intended as a future
> counterfeit sale and [defendant's] possession of it was
> consistent with the offenses for which he was on trial – an
> impermissible purpose under Rule 404(b) and irrelevant
> under Rule 401.

We view this as a challenge to step one: "is the evidence relevant for
some purpose other than to show that defendant has the propensity for
the type of conduct for which he is being tried?" *Id.* at ___, 725 S.E.2d at
67 (citation omitted).

"This Court reviews questions of relevancy *de novo*, but accords
deference to the trial court's ruling." *Glenn*, ___ N.C. App. at ___, 725
S.E.2d at 67 (citing *State v. Lane*, 365 N.C. 7, 27, 707 S.E.2d 210, 223
(2011) ("A trial court's rulings on relevancy are technically not discre-
tionary, though we accord them great deference on appeal.")).

" 'Relevant evidence' means evidence having any tendency to make
the existence of any fact that is of consequence to the determination of
the action more probable or less probable than it would be without the
evidence." N.C. Gen. Stat. § 8C-1, Rule 401.

Defendant was indicted on charges of selling and delivering a
counterfeit controlled substance and possession with intent to sell and
deliver a counterfeit controlled substance. These charges were made
after he sold two pills, which he claimed to be Vicodin, to an undercover
police officer in exchange for four dollars. Incident to his arrest, defen-
dant was searched. The officers discovered on his person two pill bottles
and Epsom salt. We consider defendant's challenges to the admission of
the Epsom salt along with testimony of an arresting officer.

> A.   In his -- in the right pocket of his shorts I found two
> prescription medication bottles. Both bottles had his
> name; they were his prescriptions. I also found a clear

plastic baggie that was tied off at the top, and that plastic baggie contained like a white rock-type substance.

. . .

It was basically an open-top bag, almost like an open-top sandwich bag, and it was just tied off at the top.

. . .

It is very similar – in my experience, it's very similar to the appearance of crack cocaine, rock crack cocaine, which is often also carried inside of the open-top sandwich bags tied off at the top.

Q.   Okay. Did you at first think that this might be cocaine?

A.   Yes, sir. I did.

Q.   Did you field test it?

A.   Yes, sir. I did.

We note that the Epsom salt removed from defendant's person bore a similarity to "crack" cocaine in appearance and packaging sufficient to warrant the officer to conduct a field test to determine if the substance contained cocaine. *See State v. Mobley,* 206 N.C. App. 285, 292, 696 S.E.2d 862, 867 (2010) (where on the charge of conspiracy to sell a counterfeit controlled substance there was substantial evidence that the defendant intentionally represented a substance to be a controlled substance where undercover officers paid for crack cocaine and the defendant provided two rocks of a hard, white substance weighing 0.15 grams which two veteran narcotics officers took to be crack cocaine, packaged in " 'small corner [baggies]' a practice normally used to deliver crack cocaine."), *petition for disc. rev. denied,* 365 N.C. 75, 706 S.E.2d 229 (2011).

We find that the Epsom salt and the officer's testimony regarding his observations was relevant in that it had a tendency to make the existence of the fact that defendant sold and delivered a counterfeit controlled substance or possessed a counterfeit controlled substance with the intent to sell or deliver more probable than it would be without the evidence. *See* N.C. Evid. R. Rule 401. Moreover, we hold that the evidence is probative of defendant's intent, plan, scheme, and modus operandi and thus, relevant for some purpose other than to show defendant's propensity for selling his prescription medication. *See Glenn,* ___ N.C. App. at ___, 725 S.E.2d at 67. Therefore, where we discern no error in the admission of this relevant evidence, defendant's contention that

the admission of testimony regarding the Epsom salt amounts to plain error is overruled.

*Statements made when appearing before the magistrate*

Defendant contends that his statements made before a magistrate have no relevance to the charged offenses and their admission amounted to plain error. Specifically, defendant argues that "[t]he statements were gratuitously presented to cast [defendant] in a negative light and create a bias against [defendant] for his violent and disrespectful behavior towards officers of the law."

Following its pretrial hearing on defendant's motion in limine, the trial court made the following ruling:

> As to statements made at the magistrate's office, the Court will find as to those that some of the statements were directed toward court officials, that being the magistrate and the arresting officer. . . . they were part and parcel of the arrest procedure, and the Court will deny the motion in limine as to those.

At trial, the court admitted the following testimony by an arresting officer:

Q.   Okay. What happened once the two of you were at the magistrate's office?

A.   [Defendant] had asked me -- he asked me a couple times what he was charged with. I told him what he was [T. 100] charged with. . . . He kept making statements that he wasn't dealing narcotics and just had his pain medication. . . . When we got into the magistrate's office, the holding area inside the magistrate's office, [defendant] became very belligerent with us; started making very threatening comments towards myself and the other police officers that were in that holding area. He made comments about [sic] he was going to kick over the table where we were all sitting. He also told me on multiple occasions he wanted to choke me out.

. . .

Q.   What happened then?

A.   I brought him before [the magistrate]. He was charged with sell and deliver of a counterfeit controlled

substance and possession with intent to sell and deliver counterfeit controlled substance. [The magistrate] spoke to [defendant]; told him he had a $2,500 secured bond; explained to him how to pay that bond like they always do. When [the magistrate] was done, [defendant] responded to him by saying, quote, "Fuck you, motherfucker," end quote.

Notwithstanding defendant's desire to have this testimony excluded, it described a part of the arrest procedure and related to his guilt of the offenses with which he had been charged. *See* N.C. Gen. Stat. § 15A-501 (2) (entitled "Police processing and duties upon arrest generally." "Upon the arrest of a person . . . without a warrant, . . . a law-enforcement officer: . . . [m]ust . . . take the person arrested before a judicial official without unnecessary delay."); *e.g. State v. James*, ___ N.C. App. ___, 715 S.E.2d 884 (2011) (holding that the admission at trial of the defendant's voluntary statements made before a magistrate following his arrest by police did not violate defendant's rights and were not subject to being suppressed). Accordingly, this argument is overruled.

New trial.

Judges ELMORE and ERVIN concur.