DIETZ, Judge.
Defendant Lacedric Jamal Lane appeals multiple convictions after he shot at a car in which his ex-girlfriend and her new boyfriend were passengers, hitting the boyfriend in the back and injuring the ex-girlfriend with shattered window glass. As explained below, we hold that the trial court properly admitted evidence that the ex-girlfriend was sixteen years old when she began her relationship with Lane because that evidence established the length of Lane's relationship with the victim, and thus supported the State's theory concerning a motive for the shooting.
We also reject Lane's argument that the trial court failed to intervene on its own initiative to address objectionable comments by the prosecutor at closing argument. Even assuming those comments were objectionable, they were not so grossly improper that they deprived Lane of a fair trial, and thus the trial court's decision not to intervene was permissible. Finally, we reject Lane's argument that the trial court plainly erred by failing to instruct the jury on imperfect self-defense. The court's instruction was not erroneous and, even if it was, the error did not have a probable impact on the jury's verdict.
Facts and Procedural History
On 30 December 2016, someone shot at Ra'chelle Sheppard and her boyfriend, Trakelvious Williams, while the couple were driving with Sheppard's parents in Princeville. Williams suffered a gunshot wound to his back. Sheppard sustained injuries from shattered window glass. After investigating, law enforcement arrested Lacedric Lane, Sheppard's ex-boyfriend, in connection with the shooting. They charged Lane with possession of a firearm by a felon and multiple charges of attempted first degree murder, assault with a deadly weapon with intent to kill, and discharging a weapon into an occupied vehicle. The case went to trial.
At trial, the jury heard competing witnesses give their accounts of what happened. Lane testified that he was walking by himself that night when a car approached him. He stated that he saw people waving at him from inside the car saying "man, watch your back," at which point he recognized Sheppard driving the car with Williams in the backseat. Lane knew Williams because they lived near each other. Lane testified that he heard rumors Williams and Sheppard were dating but he did not "believe the hype" because he had never seen them together.
According to Lane, Williams rolled down the back window of the car and said "mother-f***er I'm going to kill you." Lane tried to walk away when he heard two gunshots. Lane asserted that he shot back in self-defense, aiming at Williams because he believed Williams fired at him. Lane's account ended with the car speeding away and Lane leaving the scene, throwing his gun into the Tar River because he "was scared."
Lane admitted at trial that he lied to police in his initial interview, denying any involvement in the shooting, because he was "scared" of getting in trouble. He claimed he eventually decided to "tell the truth," and gave the police an account consistent with his trial testimony. Lane also identified Jerrod Lawrence as a witness to the shooting.
Lawrence had been Lane's friend for about ten years and testified on Lane's behalf at trial. Lawrence stated he saw Sheppard driving with Williams in the backseat and that the car nearly hit Lane as Williams stuck his hand out the car window saying "I told you I was going to get you, B." Lawrence testified that he then heard multiple gunshots but did not see Lane shooting a gun. Although he admitted having several phone calls with Lane before trial, while Lane was in jail, he denied that Lane had told him what to say.
Williams, testifying for the State, gave a different account of the shooting. He stated that Sheppard was in the back of the car with him and that Sheppard's mother was driving, with Sheppard's stepfather sitting next to her. Williams claimed that nobody in the car was armed. At a stop sign, Williams heard shots and saw Lane near the car holding a revolver and trying to open the front passenger door. Williams testified that he saw Lane shoot once where Sheppard sat and multiple times through each car window. Williams explained that he was shot in the back while trying to shield Sheppard.
Sheppard, her mother, and her stepfather also testified for the State, each giving substantially the same account as Williams. Like Williams, each of them asserted that nobody inside the car was armed that night. Detective Andrea Lewis with the Edgecombe County Sherriff's Office also testified that when she interviewed the shooting victims at the hospital, each one identified Lane as the shooter. When Detective Lewis asked Sheppard why Lane would have shot them, Sheppard replied it was because "[t]hey had broke[n] up and she had moved on."
Sheppard, then nineteen years old, testified at trial that she and Lane broke up in 2016 after dating for about two years. During trial, the State asked several witnesses about Sheppard's age when she began dating Lane and each responded that Sheppard was fifteen or sixteen at the time. Lane objected to this testimony each time, and the trial court overruled the objection.
On 5 October 2017, the jury found Lane not guilty of attempted first-degree murder of Sheppard but found him guilty of attempted first-degree murder of Williams. The jury also found Lane guilty of the remaining charges, except that they found him guilty of the lesser offense of assault with a deadly weapon, instead of assault with a deadly weapon with intent to kill. The trial court sentenced Lane to 418 months to 659 months in prison. Lane appealed.
Analysis
I. Testimony regarding Sheppard's age
Lane first challenges the admission of evidence showing that he began dating Sheppard when she was only fifteen or sixteen years old. The State first mentioned Sheppard's age during the opening statement, without objection. Then, three times during witness testimony, the State established through questioning that Sheppard was fifteen or sixteen years old when Lane began dating her. Lane objected each time and the trial court overruled each objection. Lane argues that the trial court should have excluded this evidence under Rules 401 and 404(b) of the North Carolina Rules of Evidence.
We first address Lane's relevancy argument under Rule 401. To be admissible at trial, evidence must be relevant. N.C. R. Evid. 402. Evidence is relevant if it has "any tendency" to make the existence of a fact of consequence more or less probable than it would be without the evidence. N.C. R. Evid. 401. Relevancy is a legal question that this Court reviews de novo , but the Court affords great deference to a trial court's relevancy determination. State v. Glenn , 220 N.C. App. 23, 34-35, 725 S.E.2d 58, 67 (2012).
Lane argues that the State's only purpose for admitting Sheppard's age "was to shift focus from Lane's self-defense explanation to the irrelevant fact that he chose to date a fifteen to sixteen-year-old and the connotation of bad character and criminal conduct that carried." The State responds that it introduced Sheppard's age to show the long duration of her relationship with Lane, which the State argues would have increased Lane's "investment in the relationship" and his "jealous tendencies," thereby establishing a motive for Lane to shoot Sheppard and her new boyfriend.
To be sure, the State could have established this same point (and did) by asking witnesses how long Lane and Sheppard dated, without asking about Sheppard's age when the relationship began. But Rule 401 does not render evidence irrelevant because other, similar evidence could establish the same facts in an arguably less prejudicial way. State v. Wallace , 104 N.C. App. 498, 502, 410 S.E.2d 226, 228 (1991). Here, affording great deference to the trial court's determination, we hold that the trial court properly concluded that the challenged evidence was relevant under Rule 401 because it supported the State's theory concerning motive.
Lane next contends that the evidence, even if minimally relevant, was inadmissible under Rule 404(b) because it was evidence of "other crimes, wrongs, or acts" introduced solely to show Lane's bad character. N.C. Rule Evid. 404(b). Lane contends that this evidence was used to show that he likely had a sexual relationship with a minor, and thus was inadmissible evidence of bad character.
Rule 404(b) prohibits evidence used solely to show the character of a person and that the person acted in conformity with the character, but it permits the use of that evidence for any other reason, including "as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake, entrapment or accident." Id. Here, as explained above, the State introduced this evidence to show Lane's motive-that he had been in a relationship with Sheppard for several years and thus was angry and jealous that she was now dating another man. Accordingly, the trial court did not err by admitting this evidence under Rule 404(b). Because we find no error in the admission of this evidence, we need not address Lane's arguments that the errors were prejudicial.
II. The State's closing argument
Lane next argues that the trial court erred when it failed to intervene on its own initiative after the prosecutor made "grossly improper" remarks during closing argument. Specifically, during closing argument, the prosecutor told the jury that Sheppard is "a victim of domestic violence. It was tough for her, but she got up there and told you the same things she reported to Detective Lewis the night of the incident." Lane did not object at trial but now argues on appeal that this statement was so grossly improper that the trial court should have intervened on its own initiative.
"[W]hen defense counsel fails to object to the prosecutor's improper argument and the trial court fails to intervene, the standard of review requires a two-step analytical inquiry: (1) whether the argument was improper; and, if so, (2) whether the argument was so grossly improper" that the "defendant's right to a fair trial was prejudiced by the trial court's failure to intervene." State v. Huey , 370 N.C. 174, 179-80, 804 S.E.2d 464, 469-70 (2017).
We find no error under this standard of review. Although the prosecutor's reference to "domestic violence" could have been interpreted as an argument that Lane abused Sheppard during their relationship-an argument for which there was no evidence at trial-it could also have been a reference to Lane shooting at his ex-girlfriend because he was angry that their relationship had ended. Thus, while arguably improper, we are not persuaded that this statement was so grossly improper that the trial court, on its own initiative, was required to interrupt the closing to address it. Moreover, even assuming the prosecutor's reference to "domestic violence" was objectionable, it did not infect the trial with fundamental unfairness. Lane's trial counsel ably presented Lane's alternate theory of the case based on self-defense and the jury heard all the relevant testimony concerning both sides' versions of events.
As this Court has recognized, when the trial court intervenes on its own initiative during closing argument, it does so despite recognizing "an argument which defense counsel apparently did not believe was prejudicial when he heard it." State v. Martinez , --- N.C. App. ----, ----, 795 S.E.2d 386, 391 (2016). Because this sort of sua sponte intervention by the court could inadvertently highlight issues or arguments to which defense counsel chose not to object for strategic reasons, we will not find error unless the challenged comments render the trial fundamentally unfair. As explained above, that did not occur here, and thus we find no error.
III. Self-defense jury instruction
Finally, Lane argues that the trial court erred by instructing the jury only on perfect self-defense and not imperfect self-defense. Lane concedes that he did not object to the jury instructions and thus we review this argument for plain error. N.C. R. App. P. 10(a).
For error to constitute plain error, a defendant must demonstrate that a "fundamental error occurred at trial." State v. Lawrence , 365 N.C. 506, 518, 723 S.E.2d 326, 334 (2012). "To show that an error was fundamental, a defendant must establish prejudice-that, after examination of the entire record, the error had a probable impact on the jury's finding that the defendant was guilty." Id. In other words, the defendant must show that, "absent the error, the jury probably would have returned a different verdict." Id. at 519, 723 S.E.2d at 335.
In his reply brief, Lane acknowledges that the trial court provided the pattern jury instruction for imperfect self-defense. He asserts that the State's argument on this issue is "well-taken" but argues that "even though the trial court's self-defense instruction did mirror the pattern instruction, the trial court nevertheless plainly erred in failing to instruct on the corollary of imperfect self-defense to attempted murder: the lesser included offense of attempted voluntary manslaughter."
This is a different argument than the one asserted in Lane's opening brief. Ordinarily, this Court will not permit a litigant to raise new arguments in a reply brief. Hardin v. KCS Int'l, Inc. , 199 N.C. App. 687, 707-08, 682 S.E.2d 726, 740 (2009). But even if we were to address this new argument, the result would be the same because, in light of the evidence supporting the jury's verdict, Lane has not shown that, but for the allegedly improper instruction, the jury probably would have reached a different result. Lawrence , 365 N.C. at 518, 723 S.E.2d at 334. Accordingly, we find no error-and certainly no plain error-in the trial court's judgment.
Conclusion
For the reasons explained above, we find no error.
NO ERROR.
Report per Rule 30(e).
Judges STROUD and BERGER concur.