TYSON, Judge.
Darius Terrell Hester ("Defendant") appeals from his conviction of felonious possession of a stolen firearm following the trial court's denial of his motion to suppress. Due to Defendant's failure to object at trial, this issue is properly before us solely upon plain error review. Defendant has failed to carry his burden to show error or plain error in the jury's verdict or the judgment entered thereon.
I. Background
New Hanover County Sheriff's Deputy Joshua Cranford was familiar with the Rockhill Road area in Wilmington, as he regularly patrolled that area as part of his patrol route. He described the area as having a history of criminal gang and drug activity. Deputy Cranford testified a recent home invasion had occurred in the area and numerous "break-ins" in the past. He had personally made one arrest for home invasion. He was unable to specifically recall making any arrests for breaking and entering or drug activity in the area. Deputy Cranford testified that officers generally share information with each other about areas where criminal activity is afoot and crimes are committed.
New Hanover County Sheriff's Detective Kenneth Murphy had served as a law enforcement officer for seventeen years. He also testified about criminal activity in the Rockhill Road area. Three homicides occurred in the neighborhood between 1999 and 2003. Detective Murphy testified the area was "known for" breaking and entering, drug activity, and drive-by shootings. He was unaware of when the most recent breaking and entering crimes had occurred prior to 16 August 2013.
At around 10:30 a.m. on Friday, 16 August 2013, Deputy Cranford was patrolling the area in his marked patrol car and turned onto Rockhill Road. He was unaware of whether any crimes had been committed in the area that morning or the previous night. After driving approximately one-half mile on Rockhill Road, Deputy Cranford noticed a car was pulled over toward the side of the road, but was partially parked on the travel lane of the roadway. He initially believed the car might be disabled. As Deputy Cranford's marked patrol car approached the front of the parked vehicle and came within fifty yards of the vehicle, it moved and the driver drove away "in a normal fashion."
When the car pulled away, Deputy Cranford "saw [Defendant] walk away from the vehicle and cross the road in front of [him] and continue up Rockhill Road in the opposite direction." Deputy Cranford did not know whether Defendant had gotten out of the car or had been speaking with anyone inside the car.
Deputy Cranford also testified he believed the car had pulled away and Defendant had crossed the road in reaction to his arrival and presence. He further testified he did not know "if [Defendant] was lost," or whether a drug deal had just occurred. He believed Defendant may have been dropped off on the road in order to break into people's homes.
Deputy Cranford testified he "wanted to get outside and investigate and make sure everything was okay," because of the "area that we were in" and the fact that Defendant walked from the car and the car pulled away as he approached. Deputy Cranford turned his vehicle around, activated his blue lights, and stopped Defendant.
Deputy Cranford exited his patrol car and asked Defendant whether he possessed any drugs or weapons. Defendant responded that he did not. Deputy Cranford asked Defendant for identification. Defendant did not possess a photo identification, but gave Deputy Cranford his name and date of birth. Defendant was initially polite and cooperative. He asked Deputy Cranford if he had done anything wrong. Deputy Cranford responded *12 that he had not done anything wrong.
Deputy Cranford asked Defendant to remain at the front of his patrol car while he sat inside his patrol car. Deputy Cranford contacted the Sheriff's dispatcher to determine whether Defendant had any outstanding arrest warrants.
Defendant walked from the front of the patrol car to the driver's side and "stood [at] the entrance of the car door," which made Deputy Cranford "uncomfortable." Deputy Cranford instructed Defendant to return to the front of the patrol car. Moments later, Defendant "tried to do the same thing again." At that point, Deputy Cranford exited his patrol car, stood at the front of the car with Defendant, and awaited a response from the Sheriff's dispatcher. The Sheriff's dispatcher informed Deputy Cranford that Defendant had no outstanding warrants, but that he was "known to carry" a concealed weapon based upon a prior charge for carrying a concealed weapon.
Deputy Cranford again asked Defendant whether he possessed a weapon. Defendant lied and responded that he did not. At that point, Deputy Cranford observed a slight bulge under Defendant's shirt. Defendant became confrontational when Deputy Cranford asked him to lift his shirt. Defendant lifted his shirt and pulled a handgun from his waistband. Deputy Cranford testified that Defendant pointed the gun at him and pulled the trigger. He heard the hammer click, but the weapon did not discharge.
Deputy Cranford testified he backed up and drew his weapon. He began to fire shots at Defendant, who fled while still carrying his handgun. Deputy Cranford chased Defendant down a dirt path and lost sight of him as Defendant rounded a corner. Deputy Cranford turned the corner and saw Defendant lying on the ground. Defendant had been shot in the shoulder. Defendant told Deputy Cranford he had dropped his gun. Deputy Cranford placed Defendant under arrest.
Deputy Cranford recovered Defendant's handgun in the dirt path about twenty yards away. The recovered gun was found to be loaded with a full clip and it had been reported as stolen from a home in Wilmington in 2013. At trial, Defendant testified he had bought the gun "from off the streets" and that he knew such guns were typically stolen.
Defendant was indicted and tried on the charges of attempted murder and possession of a stolen firearm. Defendant testified he did not point the gun at Deputy Cranford or pull the trigger. He stated he was attempting to hand Deputy Cranford the gun, with the barrel pointed toward the ground.
Defendant testified Deputy Cranford reacted with shock and reached for his weapon. Defendant ran. He stated he was holding the handgun when he ran, but threw it prior to being shot. Defendant was acquitted of the attempted murder charge. The jury found him to be guilty of possession of a stolen firearm. Defendant appeals.
II. Jurisdiction
Jurisdiction lies in this Court from final judgment of the superior court entered upon the jury's verdict pursuant to N.C. Gen. Stat. §§ 7A-27(b)(1) and 15A-1444(a) (2015).
III. Standard of Review and Defendant's Preservation of Error
"The standard of review in evaluating the denial of a motion to suppress is whether competent evidence supports the trial court's findings of fact and whether the findings of fact support the conclusions of law." State v. Biber, 365 N.C. 162, 167-68, 712 S.E.2d 874, 878 (2011) (citing State v. Brooks, 337 N.C. 132, 140-41, 446 S.E.2d 579, 585 (1994) ).
Defendant's motion to suppress was heard prior to trial. The trial court denied the motion immediately following the presentation of evidence and arguments of counsel. Defendant concedes defense counsel failed to object when the evidence resulting from the stop, and particularly the stolen handgun, was offered at trial. The admission of the handgun evidence must be reviewed for plain error. State v. Golphin , 352 N.C. 364, 405, 533 S.E.2d 168, 198 (2000) (holding a motion in limine is insufficient "to preserve for appeal the question of admissibility of evidence if the defendant did not object to the evidence at the time it was offered at trial"), *13 cert. denied , 532 U.S. 931, 121 S.Ct. 1380, 149 L.Ed.2d 305 (2001).
At trial, Defendant failed to object to numerous references to his possession of the stolen handgun, or to object to the tender and admission of the handgun into evidence. During his testimony, Defendant acknowledged he had purchased and possessed the stolen handgun, but denied pointing it at Deputy Cranford or pulling the trigger.
The State argues Defendant elicited the same evidence and testified at trial, and is not entitled to plain error review, because he invited the error. See N.C. Gen. Stat. § 15A-1443(c) (2015) ("A defendant is not prejudiced by the granting of relief which he has sought or by error resulting from his own conduct."). The State cites State v. Gobal , 186 N.C.App. 308, 319, 651 S.E.2d 279, 287 (2007), aff'd per curiam , 362 N.C. 342, 661 S.E.2d 732 (2008) ("Statements elicited by a defendant on cross-examination are, even if error, invited error, by which a defendant cannot be prejudiced as a matter of law.").
Once the trial court denied Defendant's motion to suppress based upon lack of reasonable suspicion for the stop, Defendant was required to defend against the charges of attempted murder and felonious possession of a stolen firearm. He defended the charges by testifying about the circumstances surrounding his possession of the stolen handgun. This testimony was subject to cross-examination by the State.
While defending against the attempted murder charge, Defendant testified to explain his actions of surrendering the weapon and stated he did not point or fire his gun at Deputy Cranford. A defendant does not waive an objection to evidence by seeking "to explain, impeach or destroy its value." State v. Badgett , 361 N.C. 234, 246, 644 S.E.2d 206, 213 (citation omitted), cert. denied , 552 U.S. 997, 128 S.Ct. 502, 169 L.Ed.2d 351 (2007). Defendant's appeal from the denial of his motion to suppress is properly before us on plain error review, and not invited error. See id .
"Under the plain error rule, defendant must convince this Court not only that there was error, but that absent the error, the jury probably would have reached a different result." State v. Jordan , 333 N.C. 431, 440, 426 S.E.2d 692, 697 (1993) (citation omitted). This burden rests upon Defendant. See id .
IV. Denial of Defendant's Motion to Suppress
Defendant's sole argument on appeal asserts the trial court erred by denying his motion to suppress the evidence obtained from the stop. Defendant argues Deputy Cranford did not possess a reasonable suspicion that he was involved in criminal activity when Deputy Cranford initially stopped and questioned him.
A. Fourth Amendment Protections
The United States and North Carolina Constitutions protect against unreasonable searches and seizures. U.S. Const. amend. IV ; N.C. Const. art. I, § 20. The protections of the Fourth Amendment apply "to seizures of the person, including brief investigatory detentions." State v. Watkins , 337 N.C. 437, 441, 446 S.E.2d 67, 69-70 (1994) (citing Reid v. Georgia, 448 U.S. 438, 440, 100 S.Ct. 2752, 2753, 65 L.Ed.2d 890, 893 (1980) ). A "seizure" has occurred under the Fourth Amendment when an officer uses a "show of authority" to stop a citizen. Florida v. Royer , 460 U.S. 491, 501-02, 103 S.Ct. 1319, 1326-27, 75 L.Ed.2d 229, 239 (1983). "[T]he crucial test [to determine if a person is seized] is whether, taking into account all of the circumstances surrounding the encounter, the police conduct would have communicated to a reasonable person that he was not at liberty to ignore the police presence and go about his business." Florida v. Bostick , 501 U.S. 429, 437, 111 S.Ct. 2382, 2387, 115 L.Ed.2d 389, 400 (1991) (citation and quotation marks omitted).
Here, Deputy Cranford turned his vehicle around and activated his blue lights after arrival upon the scene. Defendant stopped walking and voluntarily talked with Deputy Cranford. Defendant failed to provide a photo identification to the officer, but provided his name and address. The trial court properly analyzed this encounter as a stop. The State does not contest that Defendant was *14 seized to implicate the Fourth Amendment. A reasonable person would not have felt at liberty to ignore Deputy Cranford's presence and the use of blue lights on his marked vehicle, and continue to walk away. See id .
To survive Fourth Amendment scrutiny, an investigatory stop must be justified by "a reasonable suspicion, based on objective facts, that the individual is involved in criminal activity." Brown v. Texas , 443 U.S. 47, 51, 99 S.Ct. 2637, 2641, 61 L.Ed.2d 357, 362 (1979) (citations omitted). As applied by the Supreme Court of North Carolina: "A court must consider the totality of the circumstances-the whole picture in determining whether a reasonable suspicion exists" to justify an officer's investigatory stop. State v. Otto , 366 N.C. 134, 138, 726 S.E.2d 824, 828 (2012) (citation and quotation marks omitted).
"The stop must be based on specific and articulable facts, as well as the rational inferences from those facts, as viewed through the eyes of a reasonable, cautious officer, guided by his experience and training." Watkins , 337 N.C. at 441-42, 446 S.E.2d at 70 (citing Terry v. Ohio , 392 U.S. 1, 21-22, 88 S.Ct. 1868, 1880-81, 20 L.Ed.2d 889, 906 (1968) ); State v. Thompson , 296 N.C. 703, 706, 252 S.E.2d 776, 779, cert. denied , 444 U.S. 907, 100 S.Ct. 220, 62 L.Ed.2d 143 (1979). "The only requirement is a minimal level of objective justification, something more than an 'unparticularized suspicion or hunch.' " Watkins , 337 N.C. at 442, 446 S.E.2d at 70 (quoting U.S. v. Sokolow , 490 U.S. 1, 7, 109 S.Ct. 1581, 1585, 104 L.Ed.2d 1, 10, (1989) ).
At the conclusion of the suppression hearing, the trial court recited the evidence presented, as detailed above, and stated:
The Court concludes as a matter of law that the Court takes into consideration the officer's personal observations at the time that he observed a vehicle and the defendant on Rockhill Road, that it was-that it is a high crime area where several breaking and enterings, drug activity, and drive-by shootings have occurred in the past; and that Deputy Cranford did not have all this information himself as he had not himself made several arrests for breaking and enterings or the activity in that area, that the officers shared this information and that Deputy Cranford would receive updates of information about the area in which he was patrolling on a regular basis when he was on duty.
Therefore, the Court does find that the officer did have reasonable suspicion to believe that a crime was being committed at the time that he stopped the defendant on Rockhill Road. Therefore, the Court is going to deny the motion to suppress the evidence.
B. Intervening Circumstance
Even if this Court were to accept Defendant's argument that Deputy Cranford's initial stop of Defendant was not based upon a reasonable suspicion that Defendant was involved in criminal activity, the trial court's ultimate ruling on Defendant's motion to suppress to allow admission of the stolen handgun is properly upheld.
Viewed in the light most favorable to the State and under plain error review, evidence presented to the trial court at the hearing on Defendant's motion to suppress showed the recovered stolen handgun and all evidence related to the stolen handgun were obtained after Defendant's commission of a separate crime : pointing a loaded, stolen gun at Deputy Cranford and pulling the trigger. At the suppression hearing, the trial court expressly found Defendant pointed the gun at the officer and pulled the trigger.
Evidence discovered as a result of an illegal search or seizure is generally excluded at trial. See Wong Sun v. United States , 371 U.S. 471, 487-88, 83 S.Ct. 407, 417-18, 9 L.Ed.2d 441, 455 (1963). "[T]he exclusionary rule encompasses both the 'primary evidence obtained as a direct result of an illegal search or seizure and, relevant here, evidence later discovered and found to be derivative of an illegality,' the so-called 'fruit of the poisonous tree.' " Utah v. Strieff , --- U.S. ----, ----, 136 S.Ct. 2056, 2061, 195 L.Ed.2d 400, 407 (2016) (quoting Segura v. United States , 468 U.S. 796, 804, 104 S.Ct. 3380, 3385, 82 L.Ed.2d 599, 608 (1984) ). However,
*15 [w]e need not hold that all evidence is fruit of the poisonous tree simply because it would not have come to light but for the illegal actions of the police. Rather, the more apt question in such a case is whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint .
Wong Sun , 371 U.S. at 487-88, 83 S.Ct. at 417, 9 L.Ed.2d at 455 (citation and quotation marks omitted) (emphasis supplied). The Supreme Court of the United States has deemed the exclusionary rule " 'applicable only ... where its deterrence benefits outweigh its substantial social costs.' " Strieff, ---U.S. at ----, 136 S.Ct. at 2061, 195 L.Ed.2d at 407 (quoting Hudson v. Michigan , 547 U.S. 586, 591, 126 S.Ct. 2159, 2163, 165 L.Ed.2d 56 (2006) ).
"Suppression of evidence has always been our last resort, not our first impulse." Id . (ellipsis and citation omitted). Guided by these principles, the Supreme Court of the United States has recognized several exceptions to the exclusionary rule.
First, the independent source doctrine allows trial courts to admit evidence obtained in an unlawful search if officers independently acquired it from a separate, independent source. Second, the inevitable discovery doctrine allows for the admission of evidence that would have been discovered even without the unconstitutional source. Third, and at issue here, is the attenuation doctrine: Evidence is admissible when the connection between unconstitutional police conduct and the evidence is remote or has been interrupted by some intervening circumstance, so that the interest protected by the constitutional guarantee that has been violated would not be served by suppression of the evidence obtained .
Id. (internal citations and quotation marks omitted) (emphasis supplied). We address the third exception, and hold the State presented a sufficient intervening event to break any causal chain between the presumably unlawful stop and the discovery of the stolen handgun. See id .
This Court can conceive only in the most rare instances "where [the] deterrence benefits" of police conduct to suppress a firearm "outweigh[s] its substantial social costs" of preventing a defendant from carrying a concealed, loaded, and stolen firearm, pulling it at an identified law enforcement officer and pulling the trigger. See Hudson , 547 U.S. at 591, 126 S.Ct. at 2163, 165 L.Ed.2d at 64 (citation and quotation marks omitted).
1. Preservation
We initially address the dissenting opinion's notion that the State's "attenuation doctrine" argument must be dismissed, because the State failed to present that specific argument to the trial court during the hearing on Defendant's motion to suppress.
Defendant argued before the trial court that Deputy Cranford stopped him without reasonable suspicion of criminal activity, and Deputy Cranford's order to Defendant to lift his shirt, which revealed the handgun, constituted an unlawful search. Our review of the transcript of the hearing and record shows the State did not use the words "intervening circumstance" or "attenuation," and argued to the trial court that Deputy Cranford had reasonable suspicion to stop Defendant. The trial court denied Defendant's motion to dismiss on the basis that Deputy Cranford possessed reasonable suspicion to stop Defendant.
We are bound by precedents to conclude this issue is properly before us. It is well-settled in North Carolina that "[t]he question for review is whether the ruling of the trial court was correct and not whether the reason given therefor is sound or tenable. The crucial inquiry for this Court is admissibility and whether the ultimate ruling was supported by the evidence ." State v. Bone , 354 N.C. 1, 8, 550 S.E.2d 482, 486 (2001) (quoting State v. Austin , 320 N.C. 276, 290, 357 S.E.2d 641, 650, cert. denied , 484 U.S. 916, 108 S.Ct. 267, 98 L.Ed.2d 224 (1987) ) (emphasis supplied).
" '[A] correct decision of a lower court will not be disturbed because a wrong or insufficient or superfluous reason is assigned.'
*16 " State v. Dewalt , 190 N.C.App. 158, 165, 660 S.E.2d 111, 116 (quoting State v. Blackwell , 246 N.C. 642, 644, 99 S.E.2d 867, 869 (1957) ), disc. review denied , 362 N.C. 684, 670 S.E.2d 906 (2008).
The burden on appeal rests upon Defendant to show the trial court's ruling is incorrect. See State v. Herring , 322 N.C. 733, 749, 370 S.E.2d 363, 373 (1988). The occurrence of an intervening event, which purges the taint of an illegal stop, becomes an issue only if the court finds the underlying illegality.
The intervening event does not present an arguable issue until the trial court determines the defendant sustained his burden of persuasion on the illegality of the police conduct. While the State could have requested the trial court's consideration of the attenuation issue as an alternative basis to admit the handgun, the State's failure to raise the attenuation issue at the hearing does not compel nor permit this Court to summarily exclude the possibility that the trial court's ruling was correct under this or some other doctrine or rationale. See Bone , 354 N.C. at 8, 550 S.E.2d at 486 ; Blackwell , 246 N.C. at 644, 99 S.E.2d at 869.
The dissenting opinion notes the well-established trot that "the law does not permit parties to swap horses between courts in order to get a better mount." Weil v. Herring , 207 N.C. 6, 10, 175 S.E. 836, 838 (1934) ; State v. Hunter , 305 N.C. 106, 112, 286 S.E.2d 535, 539 (1982). However, those cases and all others cited only apply to instances where the party, whether Plaintiff, Defendant, or the State, is carrying the burden on appeal to show error in the lower court's ruling on appeal, and relies upon a theory not presented before the lower court.
That circumstance is not before us here. We review the trial court's ultimate ruling for error, prejudice, and, in this case, solely for plain error. This Court is free to and may uphold the trial court's "ultimate ruling" based upon a theory not presented below or even argued here. See Bone , 354 N.C. at 8, 550 S.E.2d at 486.
Our precedents clearly allow the party seeking to uphold the trial court's presumed-to-be-correct and "ultimate ruling" to, in fact, choose and run any horse to race on appeal to sustain the legally correct conclusion of the order appealed from. See id. ; Austin , 320 N.C. at 290, 357 S.E.2d at 650 ; Blackwell , 246 N.C. at 644, 99 S.E.2d at 869.
The dissenting opinion relies upon this Court's decision in State v. Gentile , 237 N.C. App. 304, 766 S.E.2d 349 (2014). Gentile is easily distinguishable from the circumstances presented here. In Gentile , the State sought to overturn the trial court's ruling, which granted the defendant's motion to suppress. This Court did not allow the State, who bore the burden on appeal to show error in the trial court's presumably correct ruling, to "swap horses" on appeal. Id. at 310, 766 S.E.2d at 353-54. For the same reason, this Court routinely dismisses arguments advanced by defendants in criminal cases when the defendants attempt to mount and ride a stronger or better, and possibly prevailing steed not run before the trial court.
Rule 10 of our Rules of Appellate Procedure governs the preservation of issues during trial proceedings. N.C. R. App. P. 10. Our conclusion that the trial court did not commit plain error to allow into evidence the stolen and loaded handgun does not change, even if we were to presume the State failed to preserve the attenuation issue for our review. Alternatively, we rule to invoke Rule 2 in this case to suspend the dissent's alleged requirements of Rule 10 to allow us to consider the State's attenuation argument.
To prevent manifest injustice to a party, or to expedite decision in the public interest, either court of the appellate division may, except as otherwise expressly provided by these rules, suspend or vary the requirements or provisions of any of these rules in a case pending before it upon application of a party or upon its own initiative, and may order proceedings in accordance with its directions.
N.C. R. App. P. 2.
This matter involves "exceptional circumstances [and] significant issues of importance in the public interest," the firing of a stolen and loaded weapon upon a police officer by a private citizen illegally carrying a weapon.
*17 Defendant was not prejudiced by the State's failure to make the attenuation argument below. The State presented evidence at the suppression hearing that Defendant fired upon the officer, which Defendant had the opportunity to rebut.
The trial court specifically found that Defendant attempted to fire at the officer when it rendered its ruling on Defendant's motion to suppress. Further, we note Defendant argues denial of his suppression motion on appeal, under plain error review, even though he failed to properly preserve his objection when the evidence was introduced and commented on multiple times at trial. Even if the State failed to properly preserve the attenuation argument in the trial court for our review, the circumstances in this case alternatively compel us to invoke Rule 2 and also review the merits of the State's arguments to uphold the trial court's ultimate ruling in its order. This issue is properly before us.
2. Commission of a Crime
To determine whether an intervening event is sufficient to break "the causal chain between the unlawful stop and the discovery of the [evidence]," the Supreme Court of the United States has delineated the following three factors: (1) "the temporal proximity between the unconstitutional conduct and the discovery of evidence to determine how closely the discovery of evidence followed the unconstitutional search;" (2) "the presence of intervening circumstances ;" and (3) "the purpose and flagrancy of the official misconduct." Strieff , --- U.S. at ----, 136 S.Ct. at 2061-62, 195 L.Ed.2d at 408 (emphasis supplied). "In evaluating these factors, we assume without deciding ... that [the officer] lacked reasonable suspicion to initially stop [the defendant]." Id.
Here, the evidence presented in the light most favorable to the State at the suppression hearing showed after Deputy Cranford was warned Defendant might be carrying a concealed weapon, noticed a bulge in Defendant's waist, and asked Defendant to lift his shirt, Defendant responded by: (1) raising his shirt; (2) pulling a loaded and stolen handgun from his waistband; (3) pointing the gun at Deputy Cranford; and (4) pulling the trigger.
Deputy Cranford testified the handgun failed to discharge when Defendant pulled the trigger. Deputy Cranford's testimony that Defendant committed the independent criminal act in the presence of the officer breaks the causal chain between the presumably unconstitutional stop and the discovery of the evidence.
The facts of this case are directly on point with the United States Court of Appeals for the Fourth Circuit's decision in State v. Sprinkle , 106 F.3d 613 (4th Cir. 1997). In Sprinkle , the officers conducted an investigatory stop of the defendant without reasonable suspicion of criminal activity. Id. at 618-19. While an officer was performing a pat-down of the defendant, the defendant began to run with the officer in pursuit. Id . at 616. The defendant pulled a handgun from the front of his pants and continued to run with his gun still drawn and fired one shot toward the officer. Id .
The Court explained: "If a suspect's response to an illegal stop 'is itself a new, distinct crime, then the police constitutionally may arrest the [suspect] for that crime.' " Id . at 619 (quoting United States v. Bailey , 691 F.2d 1009, 1017 (11th Cir. 1982) ). "Because the arrest for the new, distinct crime is lawful, evidence seized in a search incident to that lawful arrest is admissible." Id . (citing Bailey at 1018 ).
Our federal courts have explained the reasons for holding that a new and distinct crime, following an arguably illegal stop or search of the defendant, is a sufficient intervening event to provide an independent basis for an arrest and/or the admissibility of evidence uncovered during a search incident to that arrest.
(1) "a contrary rule would virtually immunize a defendant from prosecution for all crimes he might commit that have a sufficient causal connection to the police misconduct[,]" Bailey , 691 F.2d at 1017-18 ; (2) the exclusionary rule does not extend so far as to require suppression when the discovery of the evidence can be traced to the separate offense, see, e.g., *18 [U.S. v. ] Waupekenay , 973 F.2d [1533] at 1538 [ (1992) ] ; and (3) to hold otherwise would encourage persons to resist the police and create potentially violent and dangerous confrontations. Id . Challenges to even unconstitutional police searches must be made in the courts, not on the street.
United States v. Crump , 62 F.Supp.2d 560, 568 (D. Conn. 1999).
Like in Sprinkle , when Defendant "drew and fired his gun at [Deputy Cranford], he committed a new crime that was distinct from any crime he might have been suspected of at the time of the initial stop." Sprinkle , 106 F.3d at 619. Deputy Cranford had probable cause to arrest Defendant "because the new crime purged the taint of the prior illegal stop[,] [a]nd the gun, which was in plain view at the scene of the new crime, could be legitimately seized." Id . at 619-20.
Although Defendant's commission of a separate and distinct criminal offense is alone sufficient as an "intervening circumstance" to purge the taint of the presumed illegal stop, we note the third factor set forth in Strieff also favors attenuation. "The exclusionary rule exists to deter police misconduct. The third factor of the attenuation doctrine reflects that rationale by favoring exclusion only when the police misconduct is most in need of deterrence-that is, when it is purposeful or flagrant." Strieff, ---U.S. at ----, 136 S.Ct. at 2063, 195 L.Ed.2d at 409.
Here, Deputy Cranford explained that he and other officers knew Rockhill Road to be a high crime area; while patrolling the area he turned onto Rockhill Road and saw a vehicle parked partially onto the roadway; the vehicle drove away as Deputy Cranford approached; Defendant "walk[ed] away from the vehicle;" Deputy Cranford believed the car drove off and Defendant started to walk away in reaction to his presence; and he decided to investigate "to make sure everything was okay" due to the "area we were in."
Like in Strieff , there was no indication that the stop of Defendant "was part of any systemic or recurrent police misconduct." Id . at ----, 136 S.Ct. at 2063, 195 L.Ed.2d at 410. Even if the initial stop was unjustified and unsupported by reasonable suspicion, it does not "rise to a purposeful or flagrant violation of [Defendant's] Fourth Amendment rights." Id . at ----, 136 S.Ct. at 2063, 195 L.Ed.2d at 410. The trial court's ultimate conclusion to allow admission of the recovered, stolen, and loaded weapon was proper, and more so under plain error review, where Defendant failed to object to the admission of, or testimony concerning, the handgun. Defendant has failed to carry his burden to exclude this evidence under plain error review or the reverse the jury's conviction.
V. Conclusion
The evidence of the stolen handgun was admissible because the presumably unlawful stop was sufficiently attenuated by Defendant's intervening commission of a separate and distinct criminal offense of concealing and pointing a stolen and loaded gun at Deputy Cranford and pulling the trigger. These events "broke the causal chain between the [presumed] unconstitutional stop and the discovery of evidence." Id .
This issue is properly before us on plain error review of the trial court's "ultimate ruling" and conclusion to deny Defendant's motion to suppress. See Bone , 354 N.C. at 8, 550 S.E.2d at 486 (stating this Court determines "admissibility and whether the ultimate ruling was supported by the evidence" (emphasis supplied)). Furthermore, as was true in Strieff , "there is no evidence that [the] stop reflected flagrantly unlawful police misconduct." Id .
The trial court properly denied Defendant's motion to suppress. Defendant has failed in his burden to show error, much less plain error, in the trial court's ultimate ruling to allow the testimony concerning and the weapon itself to be admitted. It is so ordered .
NO PLAIN ERROR.
Judge DILLON concurs with separate opinion.
Chief Judge McGEE dissents with separate opinion.