IN THE COURT OF APPEALS OF NORTH CAROLINA

 No. COA19-25

 Filed: 15 October 2019

Columbus County, Nos. 06 CRS 6250-51, 6257-59, 6261-62, 6254-67

STATE OF NORTH CAROLINA

 v.

DANNY LAMONT THOMAS

 Appeal by defendant from judgments entered 30 August 2017 by Judge

Douglas B. Sasser in Columbus County Superior Court. Heard in the Court of

Appeals 19 September 2019.

 Attorney General Joshua H. Stein, by Special Deputy Attorney General
 Jonathan P. Babb, for the State.

 Rudolf Widenhouse, by M. Gordon Widenhouse, Jr., for defendant.

 ARROWOOD, Judge.

 Danny Lamont Thomas (“defendant”) appeals from judgments sentencing him

to four consecutive life sentences without parole and additional sentences totaling a

minimum of 385 months to a maximum of 623 months in prison. On appeal,

defendant contends the trial court erred in denying his motion to suppress, motion to

dismiss, and in admitting certain evidence under N.C. Gen. Stat. § 8C-1, Rule 404(b).

After careful review, we affirm.

 I. Background
 STATE V. THOMAS

 Opinion of the Court

 Defendant was originally tried and convicted of a number of crimes on

5 May 2011. State v. Thomas, 230 N.C. 127, 748 S.E.2d 620 (2013). On appeal, we

reversed and remanded for a new trial upon concluding defendant was denied his

right to remove a juror with a peremptory challenge. Id. at 133, 748 S.E.2d at 624.

Defendant was re-tried and then convicted on 30 August 2017 of four counts of first-

degree murder, one count of attempted first-degree murder, one count of robbery with

a firearm, one count of attempted robbery with a dangerous weapon, three counts of

second-degree kidnapping, one count of assault with a deadly weapon with intent to

kill inflicting serious injury, and one count of first-degree burglary for a string of

offenses committed on 20 August 2005, 10 September 2005, and 5 November 2005.

 The State’s evidence at trial tended to show the following facts. The Durham

Police Department issued an arrest warrant for defendant in connection with a

homicide committed in Durham in July 2005. After noticing similarities between the

Durham homicide and three homicides committed in Columbus County, the

Columbus County Sheriff’s Office and North Carolina SBI agents also began

searching for defendant. U.S. Marshals assisted Durham police officers in tracking

a phone number associated with defendant that was listed under the name “Markeeta

Crutchfield.” On 8 December 2005, Deputy Steven Warden of the El Paso County

Sheriff’s Office in Colorado went to 2305 Lexington Village Lane in Colorado Springs

to assist the U.S. Marshals in apprehending a fugitive from North Carolina. Deputy

 -2-
 STATE V. THOMAS

 Opinion of the Court

Warden and other law enforcement set up surveillance of the residence, which was

owned by Yvette Jurnett (“Jurnett”). When Jurnett arrived home, the deputies asked

if they could speak to her and she agreed. They showed her a picture of defendant

and asked if he was in her home. She told them it looks like the man staying in her

house but she knew him as “Santana.” Jurnett gave Deputy Warden consent to

search her house, adding “[i]f this person is inside of my home, I want them out.”

Jurnett also told the officers no one other than defendant was in her home, and she

had not seen any weapons.

 Deputy Warden and other deputies entered the residence through a garage to

locate defendant. Upon reaching a stairwell that led down to a basement, they heard

a male voice speak in the basement. The deputies announced their presence and

ordered the man to come out. Those commands were repeated a few times, with no

response. Deputy Warden then called defendant by name, to which defendant

responded he was not coming out. Deputy Warden exited the residence and requested

the Colorado Springs Police Department Tactical Unit be sent to the scene. Sergeant

Jason Hess, still standing in the hallway near the basement, used a mirror to look

into the basement and saw defendant holding a rifle. Defendant then yelled, “Back

the f*** up; Don’t come down here; It’s going to be a bloodbath if you guys try to come

get me.” He also informed the deputies he was loaded with ammunition. The Tactical

Unit later arrived to relieve the Sheriff’s Office and was able to apprehend defendant.

 -3-
 STATE V. THOMAS

 Opinion of the Court

 Despite having the homeowner’s consent to search the premises, the officers

sought and obtained a search warrant. Upon searching the basement, officers found

an SKS rifle, a .45 caliber Ruger handgun, loose bullets, and a backpack which

contained 9mm and other bullets, two rolls of duct tape, and a two-way radio. In a

bedroom on the second floor of the home, the officers found a duffel bag containing a

black stocking cap, a blue-and-white bandana, a red-and-white bandana, and a white-

red-and-black foam hockey mask. In addition, they also found a North Carolina

driver’s license with defendant’s name on it in a suitcase.

 Defendant was arrested and charged with a string of crimes committed in

Columbus County. These included the attempted murder of Terrence Rowell

(“Rowell”) on 20 August 2005; the murder of Craig Williams (“Williams”) and

kidnapping of Centia McLeod (“McLeod”) on 10 September 2005; and the murders of

Dennis Inman, Regina Inman (collectively, “Inman”), and Anthony Martin (“Martin”)

on 5 November 2005. Testimony about the Rowell and Williams crimes revealed one

of the perpetrators was a black man wearing a Jason-style hockey mask with holes

in it, similar to the one seized from defendant in Colorado. The man in the hockey

mask who attacked Rowell and Williams had a TEC-9 gun with holes in it. Police

officers who investigated the Rowell scene found a fired, 9mm Luger shell casing,

which was similar to a live round seized in Colorado. Jacqueline Battle testified

 -4-
 STATE V. THOMAS

 Opinion of the Court

defendant visited her house on 3 September 2005, and was carrying a gun with holes

in it.

 Forensic examination showed some 9mm shell casings from the Rowell,

Williams, and Inman shootings were all fired from the same gun. The .45 shell

casings from the Inman murders also matched a .45 cartridge found near Williams.

In addition, Rowell and Martin were both bound with duct tape similar to the duct

tape seized in Colorado. The DNA profile generated from a bloody impression on the

roll of duct tape seized in Colorado matched the DNA profile of the bloodstain of

Martin. Expert testimony revealed a profile from bloodstain cuttings from the hockey

mask seized in Colorado matched the DNA profile from Williams.

 Over defendant’s timely objection, evidence of two other crimes believed to be

committed by defendant on 26 December 2004 and 15 July 2005 was also presented

at trial for purposes of proving identity. Testimony about the incidents revealed they

were committed by a man in a white Jason mask with holes in it, and that bullets

from the two crime scenes were fired from the same .45-caliber gun.

 On 1 August 2017, defendant filed a motion to suppress all the evidence seized

in Colorado as a result of the installation and use of a pen register device on the cell

phone he was using. On 14 August 2017, the court orally denied the motion and

signed a detailed written order nunc pro tunc on 5 October 2017. Defendant

presented no evidence at trial, but moved to dismiss all the charges at the close of all

 -5-
 STATE V. THOMAS

 Opinion of the Court

the evidence. The jury found defendant guilty of all charges. He was sentenced to

four consecutive life sentences without parole for the four murders; 127 months to

162 months for assault with a deadly weapon with intent to kill inflicting serious

injury and second-degree kidnapping; 117 months to 150 months for first-degree

burglary and second-degree kidnapping; and 251 months to 311 months for attempted

murder, robbery with a dangerous weapon, and first-degree kidnapping. Defendant

gave notice of appeal in open court.

 II. Discussion

 On appeal, defendant argues the trial court erred by: (1) denying the motion

to suppress evidence seized pursuant to an unconstitutional search based on cell

phone information showing defendant’s location that was obtained without a

warrant; (2) denying the motion to dismiss the charge of kidnapping McLeod where

the evidence did not show she was confined or removed beyond that necessary to rob

her with a dangerous weapon; and (3) admitting evidence about a prior, violent

incident for purposes of proving his identity, absent any proof of the defendant’s

involvement. We address each argument in turn below.

 A. Motion to Suppress

 Defendant first argues the trial court erred in denying the motion to suppress

evidence seized pursuant to an unconstitutional search based on cell phone

 -6-
 STATE V. THOMAS

 Opinion of the Court

information showing defendant’s location that was obtained without a warrant. For

the following reasons, we reject defendant’s contentions.

 “Our review of a trial court’s denial of a motion to suppress is ‘strictly limited

to determining whether the trial judge’s underlying findings of fact are supported by

competent evidence, in which event they are conclusively binding on appeal, and

whether those factual findings in turn support the judge’s ultimate conclusions of

law.’ ” State v. Jordan, 242 N.C. App. 464, 469, 776 S.E.2d 515, 519 (2015) (quoting

State v. Cooke, 306 N.C. 132, 134, 291 S.E.2d 618, 619 (1982)). “The trial court’s

conclusions of law . . . are fully reviewable on appeal.” State v. Hughes, 353 N.C. 200,

208, 539 S.E.2d 625, 631 (2000).

 On 1 August 2017, defendant filed a motion to suppress all evidence obtained

from the installation and use of a pen register device on defendant’s cell phone

without a warrant. He argued the warrantless location tracking constituted an

unreasonable search in violation of the Fourth Amendment of the U.S. Constitution.

On 5 October 2017, the trial court entered an order nunc pro tunc to 14 August 2017

denying defendant’s motion to suppress. Defendant now contends the trial court

erred in denying his motion.

 Defendant was a prime suspect in an investigation of a string of murders that

occurred in Columbus County, and there was a warrant for his arrest in connection

with a Durham Police investigation of the murder of Ralph Joseph. In order to

 -7-
 STATE V. THOMAS

 Opinion of the Court

apprehend defendant, officers sought four court orders compelling telephone

companies to provide them with transactional records associated with phone numbers

they believed defendant was using. Specifically, they sought permission to install

and use a pen register to gather information about phone activity and also requested

the companies provide cell site location information (“CSLI”) in order to locate

defendant. The requested CSLI was to span a time period from 5 November 2005 to

sixty days after the issuance of the orders.

 The requests stated “responsible grounds exist to suspect that [defendant] shot

Ralph Joseph” and “the information sought is relevant and material to an ongoing

criminal investigation” and could assist in the apprehension of a fugitive. Instead of

seeking a warrant, law enforcement sought and obtained this information under N.C.

Gen. Stat. § 15A-262, which only required a certification the information sought was

“relevant” to an ongoing criminal investigation. N.C. Gen. Stat. § 15A-262 (2017).

On 5 December 2005, a court order issued pursuant to N.C. Gen. Stat. § 15A-262

directed T-Mobile to provide the transactional records for cellular telephone number

(571) 331-****, which was listed under the name “Markeeta Crutchfield.” Officers

were able to locate defendant through the tracking of that cell phone at 2305

Lexington Village Lane in Colorado Springs, Colorado. There, they arrested

defendant and seized evidence tying him to the crimes he was charged with.

 -8-
 STATE V. THOMAS

 Opinion of the Court

 In support of his argument the trial court erred in denying his motion to

suppress the evidence seized in Colorado, defendant primarily relies on the Supreme

Court’s decision in Carpenter v. United States, __ U.S. __, 201 L. Ed. 2d 507 (2018).

There, the Court was presented with the issue of whether orders compelling the

production of 7-127 days’ worth of historical CSLI constituted a search, thereby

triggering the warrant requirement. Id. at __, 201 L. Ed. 2d 516. In that case, officers

investigating a string of thefts sought and obtained court orders compelling phone

companies to hand over historical CSLI records for the defendant, seeking evidence

the defendant was present at the robberies. Id. at __, 201 L. Ed. 2d at 516. The

officers did not have a warrant, but acted pursuant to the federal Stored

Communications Act, 18 U.S.C. § 2703(d), which required the government to show

“reasonable grounds” for believing the information was relevant and material to an

ongoing investigation. Id. at __, 201 L. Ed. 2d at 516.

 In a narrow ruling, the Court concluded the government needed to first obtain

a warrant before accessing a phone company’s historical CSLI on its customers.

However, the Carpenter Court emphasized “[w]e do not express a view on matters not

before us: real-time CSLI or ‘tower dumps’ . . . .” Id. at __, 201 L. Ed. 2d at 525.

Thus, Carpenter only established the government must obtain a warrant before it can

access a phone company’s historical CSLI; it did not extend its holding to the issue of

government acquisition of real-time or prospective CSLI.

 -9-
 STATE V. THOMAS

 Opinion of the Court

 In the present case, law enforcement requested both historical and prospective

CSLI for the phone numbers associated with defendant. Because Carpenter was

decided only with respect to historical CSLI, it is dispositive on that issue only.1

Additionally, we decline to extend the holding in Carpenter to real-time or prospective

CSLI. Though unclear from the Record whether it was the real-time or historical

CSLI which allowed law enforcement to obtain defendant’s location, it is not

necessary for us to make a distinction in this case. Without reaching the question of

whether an individual has a reasonable expectation of privacy in his real-time or

prospective CSLI, we affirm the trial court’s denial of defendant’s motion to suppress

because of the attenuation doctrine.

 In its order denying defendant’s motion to suppress, the trial court made the

following findings of fact:

 3. On 5 December 2005, Sgt. David Nobles applied for,
 and received, an order allowing for the installation
 and use of a pen register pursuant to [N.C. Gen. Stat.]
 § 15A-262, however, the State of North Carolina never
 sought or obtained a search warrant for this
 information.

 ....

 1 The State argues Carpenter is not applicable here because it was decided thirteen years after
law enforcement obtained orders for the historical CSLI under a then-valid statute. However, the
Supreme Court has held “a new rule for the conduct of criminal prosecutions is to be applied
retroactively to all cases, state or federal, pending on direct review or not yet final, with no exception
for cases in which the new rule constitutes a ‘clear break’ with the past.” Griffith v. Kentucky, 479
U.S. 314, 328, 93 L. Ed. 2d 649, 661 (1987). Because this case was pending on direct appeal when the
rule in Carpenter was issued, Carpenter is binding precedent.

 - 10 -
 STATE V. THOMAS

 Opinion of the Court

5. That the order dated 5 December 2005 does not state
 the defendant’s name and does state that the
 information sought is relevant and material to an
 ongoing criminal investigation to locate a fugitive,
 wanted in connection with violation of North Carolina
 Criminal Law 14-17 –see defendant’s “Exhibit D”.

6. The order directed T-Mobile to furnish agents with
 transactional records pertaining to cellular/wireless
 phone number 531-331-[****], all for the time period
 from 5 November 2005 to present to include sixty days
 from the order – see defendant’s “Exhibit D”.

....

8. The defendant, Danny Thomas, was located through
 the tracking of that cell phone at 2305 Lexington
 Village in Colorado Springs, Colorado. It is unclear
 whether the information received was historical or
 real time.

....

14. Officers of the Regional Fugitive Task Force already
 had determined that the public utilities account for
 that residence was in the name of Yvette Jurnett, and
 that a Volkswagon automobile was registered with the
 Colorado Department of Motor Vehicles to Yvette
 Jurnett at that address.

....

20. The officers [ ] showed [Ms. Jurnett] an old arrest
 photograph of defendant from the State of New York.
 Ms. Jurnett stated that person in the photograph
 appeared to be the man who had been staying with
 her and that he probably was in the residence at that
 time. The officers told her that defendant was wanted
 for murder and asked her for consent to search the
 residence for defendant.

 - 11 -
 STATE V. THOMAS

 Opinion of the Court

21. Ms. Jurnett replied that she did not want anyone who
 was charged with murder in her home and gave the
 officers verbal consent to search the residence.

....

24. Upon entering the residence, [Sherriff’s] deputies
 heard a male voice coming from the basement of the
 townhome. They heard the male say, “Baby, they’re
 coming in now.” Deputy Hess announced, “El Paso
 Sheriff’s Department, come out!” The man replied, “If
 you come down, I’ll shoot you.”

....

27. Inside the residence, Deputy Donels removed a mirror
 from the wall and employed it to look down the
 stairwell leading to the basement. In the mirror’s
 reflection, the deputies could see the defendant at the
 bottom of the stairwell pointing a rifle in their
 direction.

....

30. At 9:07 pm, Colorado Springs Police Officer Steven
 Jensen obtained a search warrant (State’s Exhibit 5)
 from the Honorable David L. Shakes, El Paso County
 District Judge, authorizing officers to enter and
 search the townhouse for the purposes of arresting
 defendant [ ]and seizing firearms, ammunition, and
 “items of indicia as proof of occupancy for 2305
 Lexington Village Lane.”

31. Shortly after the arrival of that search warrant on the
 scene, Sgt. Rigdon ordered [ ] defendant to exit the
 basement. When defendant did not comply, officers
 introduced chemical agents into the basement. After
 he fired three rifle shots up the stairway, defendant

 - 12 -
 STATE V. THOMAS

 Opinion of the Court

 emerged and the officers immediately apprehended
 him.

 Based on its findings of fact, the trial court concluded:

 1. That the court finds by at least a preponderance of the
 evidence that there has not been a Fourth
 Amendment violation of the United States
 Constitution.

 2. That even if there has been such a violation, the court
 finds that through the attenuation doctrine, the
 evidence discovered was admissible.

 As an initial matter, we note the State contests whether defendant has

standing to raise this argument because the telephone number used to track his

location was listed under someone else’s name. However, the State failed to raise

this argument at trial, and is therefore precluded from raising it on appeal. State v.

Phillips, 151 N.C. App. 185, 187-88, 565 S.E.2d 697, 700 (2002) (citing Steagald v.

United States, 451 U.S. 204, 208-209, 68 L. Ed. 2d 38, 43-44 (1981)).

 Assuming, arguendo, the CSLI search of the phone defendant was using was

unconstitutional, we agree with the trial court’s conclusion that the evidence seized

in Colorado was nevertheless admissible under the attenuation doctrine.

 “[E]vidence discovered as a result of an illegal search or seizure is generally

excluded at trial.” State v. Hester, __ N.C. App __, __, 803 S.E.2d 8, 14 (2017) (citing

Wong Sun v. United States, 371 U.S. 471, 487-88, 9 L. Ed. 2d 441, 455 (1963)). “[T]he

exclusionary rule encompasses both the ‘primary evidence obtained as a direct result

 - 13 -
 STATE V. THOMAS

 Opinion of the Court

of an illegal search or seizure’ and, relevant ‘here, evidence later discovered and found

to be derivative of an illegality,’ the so-called ‘fruit of the poisonous tree.’ ” Utah v.

Strieff, __ U.S. __, __, 195 L. Ed. 2d 400, 407 (2016) (quoting Segura v. United States,

468 U.S. 796, 804, 82 L. Ed. 2d 599, 608 (1984)). Because the exclusionary rule was

adopted for the sole purpose of deterring police misconduct, the Supreme Court

carved out several exceptions to the rule, including the attenuation doctrine. Id. at

__, 195 L. Ed. 2d at 407.

 Under the attenuation doctrine, “[e]vidence is admissible when the connection

between unconstitutional police conduct and the evidence is remote or has been

interrupted by some intervening circumstance, so that ‘the interest protected by the

constitutional guarantee that has been violated would not be served by suppression

of the evidence obtained.’ ” Id. at __, 195 L. Ed. 2d at 407 (quoting Hudson v.

Michigan, 547 U.S. 586, 593, 165 L. Ed. 2d 56, 65 (2006)). In essence, “[t]he

attenuation doctrine evaluates the causal link between the government’s unlawful

act and the discovery of evidence[.]” Id. at __, 195 L. Ed. 2d at 408. The Supreme

Court has identified three factors to aid in determining whether there was a sufficient

intervening event to break the causal link between the government’s unlawful act

and the discovery of evidence: (1) the “temporal proximity” of the unconstitutional

conduct and discovery of evidence, (2) “the presence of intervening circumstances,”

and (3) “particularly, the purpose and flagrancy of the official misconduct.” Brown v.

 - 14 -
 STATE V. THOMAS

 Opinion of the Court

Illinois, 422 U.S. 590, 603-604, 45 L. Ed. 2d 416, 427 (1975) (internal citations and

footnote omitted).

 Here, the first factor, which favors attenuation only when “substantial time”

has passed, arguably weighs in favor of excluding the evidence. Strieff, at __, 195 L.

Ed. 2d at 408 (citing Kaupp v. Texas, 538 U.S. 626, 633, 155 L. Ed. 2d 814, 822 (2003)).

Just three days after law enforcement obtained CSLI for the phone number

associated with defendant, they were able to locate defendant and seize the evidence

in Colorado. While three days is more than mere minutes or hours, we think it does

not amount to a substantial amount of time in light of the time and resources needed

to apprehend defendant in another state.

 The second factor, however, weighs in favor of attenuation, as a number of

events here constitute intervening circumstances. In Hester, this Court considered a

defendant’s motion to suppress evidence discovered after an unlawful stop by a police

officer. __ N.C. App. at __, 803 S.E.2d at 14. There, we held the defendant’s separate

crime of pointing a loaded gun at an officer and pulling the trigger constituted an

intervening circumstance under the attenuation doctrine. Id. at __, 803 S.E.2d at 14-

15. Here, defendant possessed of a number of firearms and ammunition, pointed his

gun at officers and threatened to shoot, and then did shoot at officers when they

attempted to apprehend him. Similar to Hester, this constituted an intervening

circumstance sufficient to attenuate the connection between any unconstitutional

 - 15 -
 STATE V. THOMAS

 Opinion of the Court

police conduct and the discovery of evidence. Moreover, although the CSLI allowed

law enforcement to locate defendant, it did not provide a basis for which they could

search the house defendant was staying in. Ultimately, officers discovered the

contested evidence only after obtaining both the consent of the owner of the house

and a valid search warrant. All of these facts weigh heavily in the State’s favor for

finding attenuation.

 The third factor, which emphasizes the deterrence function of the exclusionary

rule by requiring us to consider the purpose and flagrancy of the official misconduct

at issue, also strongly favors attenuation. Here, the misconduct was neither

purposeful nor flagrant. In fact, at the time of the CSLI search, it was not considered

misconduct at all – it was the law. North Carolina law enforcement acted pursuant

to a North Carolina law valid at the time—and which remained valid until thirteen

years later—which they had no reason to suspect was unconstitutional. We are

unable to imagine how any deterrent function is served by excluding evidence

discovered through lawful conduct.

 Weighing these factors as a whole, we conclude the trial court did not err in

denying defendant’s motion to suppress because the CSLI search was too attenuated

from the discovery of evidence. See Strieff, at __, 195 L. Ed. 2d at 410 (holding

attenuation found where two out of three factors supported that conclusion).

 B. Motion to Dismiss

 - 16 -
 STATE V. THOMAS

 Opinion of the Court

 Defendant next argues the trial court erred in denying his motion to dismiss

the charge of kidnapping McLeod, where the evidence did not show she was confined

or removed beyond that necessary to rob her with a dangerous weapon. We disagree.

 We review a trial court’s denial of a motion to dismiss de novo. State v. Smith,

186 N.C. App. 57, 62, 650 S.E.2d 29, 33 (2007) (citation omitted). “A motion to dismiss

based on insufficiency of the evidence to support a conviction must be denied if, when

viewing the evidence in the light most favorable to the State, there is substantial

evidence to establish each essential element of the crime charged and that defendant

was the perpetrator of the crime.” State v. Cody, 135 N.C. App. 722, 727, 522 S.E.2d

777, 780 (1999) (citation and internal quotation marks omitted). “Substantial

evidence is such relevant evidence as a reasonable mind might accept as adequate to

support a conclusion.” State v. Smith, 300 N.C. 71, 78-79, 265 S.E.2d 164, 169 (1980).

 Kidnapping is the unlawful confinement, restraint, or removal “from one place

to another, any other person 16 years of age or over without the consent of such

person” for the purpose of “[f]acilitating the commission of any felony.” N.C. Gen.

Stat. § 14-39(a) (2017). We have recognized that some crimes, such as armed robbery,

cannot be committed without some restraint or removal of the victim. State v.

Fulcher, 294 N.C. 503, 523-24, 243 S.E.2d 338, 351-52 (1978). Thus “a conviction for

kidnapping requires restraint or removal more than that which is an inherent,

inevitable part of the commission of another felony.” State v. Warren, 122 N.C. App.

 - 17 -
 STATE V. THOMAS

 Opinion of the Court

738, 740, 471 S.E.2d 667, 668 (1996) (citing State v. Irwin, 304 N.C. 93, 102-103, 282

S.E.2d 439, 446 (1981)). Whether a restraint was more than that which is an inherent

or inevitable part of another felony depends on “whether the victim is exposed to

greater danger than that inherent in the armed robbery itself.” State v. Johnson, 337

N.C. 212, 221, 446 S.E.2d 92, 98 (1994).

 North Carolina courts have on several occasions distinguished when a victim

was restrained or removed to an extent beyond that inherent in an armed robbery.

In State v. Stokes, the defendant completed a robbery and then ordered the victim at

gunpoint to go to the back of the store and into a car waiting outside. 367 N.C. 474,

482, 756 S.E.2d 32, 37 (2014). Because the defendant was removing the victim in an

attempt to flee, not to facilitate a robbery, the Stokes court held the removal could not

be considered inherent to the armed robbery. Id.; see also State v. Thompson, 129

N.C. App. 13, 19-20, 497 S.E.2d 126, 130 (1998) (holding defendant’s removal of her

victims to another room after she already robbed them was not an inherent and

integral part of the armed robbery because none of the property she stole was kept in

that room). In addition, by ordering the victim to get into the car after the robbery,

“defendant attempted to place [the victim] in danger greater than that inherent in

the underlying felony.” Id.

 In State v. Beatty, the robbery victim’s hands were bound with duct tape and

he was kicked in the back twice. 347 N.C. 555, 559, 495 S.E.2d 367, 370 (1998). Our

 - 18 -
 STATE V. THOMAS

 Opinion of the Court

Supreme Court held “[b]ecause the binding and kicking were not inherent, inevitable

parts of the robbery, these forms of restraint ‘exposed [the victim to a] greater danger

than that inherent in the armed robbery itself.’ ” Id. (quoting Irwin, 304 N.C. at 103,

282 S.E.2d at 446). It further noted the defendant “increased the victim’s

helplessness and vulnerability beyond what was necessary to enable him and his

comrades to rob the [victim].” Id.

 Here, the evidence, viewed in the light most favorable to the State, shows

defendant continued to restrain and remove McLeod beyond what was necessary to

rob her. After robbing, beating, and murdering her boyfriend Craig Williams in front

of her, defendant forced McLeod at gunpoint to walk through her house into a

bedroom where she told him she had placed her car keys. After she gave him the

keys, they walked back through the house to the living room, where her children were

located. Before leaving, defendant pointed his gun at her head and pulled the trigger

twice, but the gun jammed both times. His partner yelled that they needed to leave.

Defendant told McLeod not to call anyone, and then drove away in her car. We hold

defendant’s removal of McLeod from the bedroom to the living room after stealing her

car keys constituted restraint and removal “not inherent and integral to” the

underlying armed robbery. Once defendant obtained McLeod’s car keys, the robbery

was complete. Similar to Stokes, defendant’s continued restraint and removal of

 - 19 -
 STATE V. THOMAS

 Opinion of the Court

McLeod was for the purpose of allowing him to flee the scene, not to facilitate the

robbery. Thus, it was not inherent in the robbery.

 In addition, defendant “exposed [McLeod] to greater danger than that inherent

in the armed robbery itself” when he attempted to murder her after completing the

robbery. McLeod complied with every direction defendant gave her to enable him to

take her car keys. Yet, after getting the car keys, defendant sought to end McLeod’s

life. Although some restraint and removal was necessary to force McLeod to give her

keys to defendant, shooting her point-blank in front of her young children afterwards

was not. Similar to the victim in Beatty, defendant’s use of force here increased

McLeod’s vulnerability and helplessness beyond what was necessary to enable

defendant to rob her. Accordingly, the trial court did not err in denying defendant’s

motion to dismiss because there is substantial evidence to establish each essential

element of the kidnapping charge, separate and apart from the armed robbery.

 C. Admission of Evidence Under Rule 404(b)

 Finally, defendant argues the trial court erred in admitting evidence about a

prior, violent incident in order to prove his identity, without any proof he was the

perpetrator in that incident. Specifically, defendant contends “the evidence ran afoul

of Rules [of Evidence] 401 and 404 because it did not tend to make [defendant’s]

identity in the charged crimes more probable.” We disagree.

 - 20 -
 STATE V. THOMAS

 Opinion of the Court

 This Court reviews de novo the trial court’s legal conclusions that evidence was

offered for a proper purpose under Rule 404(b) and is relevant under Rule 401. State

v. Adams, 220 N.C. App. 319, 323, 727 S.E.2d 577, 581 (2012). We then “determine

whether the trial court abused its discretion in balancing the probative value of the

evidence under Rule 403.” Id. (quoting State v. Martin, 191 N.C. App. 462, 467, 665

S.E.2d 471, 474 (2008)).

 Rule 404(b) provides that “[e]vidence of other crimes, wrongs, or acts is not

admissible to prove the character of a person in order to show that he acted in

conformity therewith. It may, however, be admissible for other purposes, such as

proof of motive, opportunity, intent, preparation, plan, knowledge, identity . . . .”

N.C. Gen. Stat. § 8C-1, Rule 404(b) (2017). “[I]n order to be admissible under Rule

404(b) on the issue of identity, ‘[t]he other crime may be offered on the issue of [the]

defendant’s identity as the perpetrator when the modus operandi of that crime and

the crime for which [the] defendant is being tried are similar enough to make it likely

that the same person committed both crimes.’ ” State v. Moses, 350 N.C. 741, 759,

517 S.E.2d 853, 865 (1999) (quoting State v. Carter, 338 N.C. 569, 588, 451 S.E.2d

157, 167 (1994)). Evidence offered under Rule 404(b) must also be relevant to a

material issue in the case. State v. Hanif, 228 N.C. App. 207, 213-14, 743 S.E.2d 690,

694-95 (2013). Pursuant to Rule 401, evidence is relevant if it has “any tendency to

make the existence of any fact that is of consequence to the determination of the

 - 21 -
 STATE V. THOMAS

 Opinion of the Court

action more probable or less probable than it would be without the evidence.” N.C.

Gen. Stat. § 8C-1, Rule 401 (2017).

 Here, evidence of a prior bad act for which defendant was never formally

charged was offered at trial for purposes of proving defendant’s identity. Shevika

Young (“Young”) testified at trial that on the night of 26 December 2004, a man in “a

white mask with holes in it, kind of like a Jason mask,” entered her home with a gun.

He and another man fired shots into the home, injuring Young’s mother, Shelvia

Hastings. They were there looking for Young’s boyfriend, Antonio McFadden, who is

a suspected drug dealer. They threatened to kill her if he did not come out. The men

left upon realizing McFadden escaped through a bedroom window.

 Defendant argues there is no evidence he participated in this incident and that

it amounts to impermissible character evidence. In support of his argument this

incident is irrelevant to proving his identity, he cites to State v. Carpenter, 361 N.C.

382, 646 S.E.2d 105 (2007). There, evidence of a prior sale of cocaine by the defendant

was held inadmissible under Rule 404(b) because of generic and insufficient

similarities between the prior sale and the one for which he was charged. Id. at 389,

646 S.E.2d at 110. The Carpenter court noted “[w]hen the State’s efforts to show

similarities between crimes establish no more than ‘characteristics inherent to most’

crimes of that type, the State has ‘failed to show . . . that sufficient similarities

existed’ ” for the purposes of Rule 404(b). Id. at 390, 646 S.E.2d at 111 (quoting State

 - 22 -
 STATE V. THOMAS

 Opinion of the Court

v. Al-Bayyinah, 356 N.C. 150, 155, 567 S.E.2d 120, 123 (2002)). Unlike in Carpenter,

however, more than mere generic similarities are present here. More instructive, we

think, is our Supreme Court’s decision in Moses.

 In Moses, the modus operandi of two murders was held similar enough to make

it likely the same person committed the two murders where the evidence showed: the

victims were associates of the defendant in the drug trade, they were killed in the

same manner and locale within two months, they were killed at their homes, they

were shot with the same gun, and the gun belonged to the defendant. 350 N.C. at

759, 517 S.E.2d at 865. Similarly, in the present case, the District Attorney pointed

out the common elements of the Young incident with the incidents defendant was

being charged with: (1) the perpetrator wore a Jason-style white hockey mask with

holes in it, similar to the one seized from defendant in Colorado; (2) the targets were

all suspected drug dealers or living with suspected drug dealers; (3) the attacks all

took place at night at the victims’ homes; (4) defendant had an accomplice; and (5)

the incidents had both temporal and geographic proximity, most of them taking place

within a month or two of each other, and within the same city. In addition, forensic

evidence revealed that the cartridge cases found in Young’s home matched the .45-

caliber gun seized from defendant in Colorado. All of this evidence supports a

reasoned conclusion defendant was the perpetrator in this incident, and the common

modus operandi helps establish his identity in the crimes he was charged with.

 - 23 -
 STATE V. THOMAS

 Opinion of the Court

 We hold the evidence was properly admitted under Rules 404(b) and 401 for

purposes of proving defendant’s identity. In addition, the trial court did not abuse its

discretion in admitting the evidence under Rule 403. Pursuant to Rule 403, evidence

deemed admissible under Rule 404(b) may still be excluded if the trial court finds its

probative value is substantially outweighed by the danger of undue prejudice. N.C.

Gen. Stat. § 8C-1, Rule 403 (2017). We will overrule a trial court’s admission of

evidence under Rule 403 only if the trial court abused its discretion such that its

ruling was “so arbitrary that it could not have been the result of a reasoned decision.”

State v. Hagans, 177 N.C. App. 17, 23, 628 S.E.2d 776, 781 (2006) (quoting State v.

Hayes, 314 N.C. 460, 471, 334 S.E.2d 741, 747 (1985)). Due to the similarities

between the incidents and relatively short time periods between them, we hold the

trial court did not abuse its discretion. See id. at 25, 628 S.E.2d at 782 (holding the

similarities between two incidents combined with the short time period in which they

occurred “support a finding that the probative value of the evidence is not

substantially outweighed by the danger of unfair prejudice.”).

 III. Conclusion

 For the foregoing reasons, we hold defendant had a fair trial free from error.

 NO ERROR.

 Judges ZACHARY and HAMPSON concur.

 - 24 -